IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **LISA SJOBERG**,                      ) | |
|                          ) | |
|         **Plaintiff**,         ) | |
|                          ) | |
|       **vs.**                ) | Civil Action No. |
|                          ) | |
| **MBM FOOD SERVICE, INC. and**   ) | |
| **AMBASSADOR PERSONNEL, INC.**,  ) | |
|                          ) | |
|       **Defendants**.        ) | Jury Trial Demanded |
| _____) | |

## COMPLAINT

Plaintiff Lisa Sjoberg ("Sjoberg"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 7, brings this Complaint against Defendants MBM Food Service, Inc. ("MBM") and Ambassador Personnel, Inc. ("Ambassador") and shows the Court as follows:

## INTRODUCTION

1.

This is an action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") to recover overtime pay for hours all hours worked in excess of forty (40) per week.

1

## JURISDICTION AND VENUE

2.

The jurisdiction of this Court is proper pursuant to Article III, § 2 of the United States Constitution, 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, as this case arises under the FLSA, a federal statute which affects interstate commerce.

3.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 as Defendants MBM's and Ambassador's registered agents for service are located in this judicial district.

## PARTIES

4.

Plaintiff Sjoberg is a natural person and resides in Bibb County, Georgia.

5.

Defendant MBM is a domestic corporation organized and existing under the laws of the State of Georgia.  MBM may be served with process through its registered agent CT Corporation System, 1201 Peachtree Street, NE, Atlanta, GA 30361.

6.

Defendant MBM is subject to the personal jurisdiction of this Court.

7.

Defendant Ambassador is a domestic corporation organized and existing under the laws of the State of Georgia. Ambassador may be served with process through its registered agent CT Corporation System, 1201 Peachtree Street, NE, Atlanta, GA 30361.

8.

Defendant Ambassador is subject to the personal jurisdiction of this Court.

## FACTUAL ALLEGATIONS

9.

Defendant MBM is a nationwide food service distribution company which delivery food to chain restaurants across the United States and internationally.

10.

Defendant Ambassador is a staffing company operating in at least eight different states, which provides labor to its clients, such as Defendant MBM.

11.

From April 13, 2015 until June 22, 2015, Defendant MBM employed Plaintiff as a Customer Service Representative in Macon, Georgia.

12.

Sjoberg was placed as a Customer Service Representative at Defendant MBM by Defendant Ambassador, which had a contractual relationship with MBM to provide MBM with labor as requested by MBM.

13.

At all times during her employment, Sjoberg's primary duties as a Customer Service Representative included answering and fielding telephone calls, packing drivers' route bags, completing paperwork, and shutting down and rebooting the computer system each night.

14.

At all times during her employment, Sjoberg was paid wages at the rate of $11.50 per hour.

15.

Throughout Sjoberg's employment, she regularly and routinely worked in excess of forty (40) hours in the seven day work period.

16.

Throughout Sjoberg's employment, Sjoberg was often left alone at the office.

17.

Because Sjoberg was often left alone at the office, she could not take a meal break or was required to take a shortened meal break period.

18.

There were at least 7 days wherein Sjoberg did not take a meal break and worked through her meal break.

19.

When Sjoberg worked through her meal break, Sjoberg wrote "no lunch" on her time cards.

20.

Sjoberg was paid no wages for the meal breaks which she did not take and during which she performed her job duties.

21.

At all times relevant, the task of shutting down and rebooting the computer took Sjoberg approximately 1 ½ hours at the end of each work shift.

22.

While performing the task of shutting down and rebooting the computer, Sjoberg was unable to "clock out" and often manually wrote her hours worked.

23.

Throughout Sjoberg's employment, Defendants failed to compensate Sjoberg for all hours she worked in excess of 40 hours during each work week.

24.

Throughout Sjoberg's employment, MBM truncated the number of hours that Sjoberg actually worked during each work week so that she worked in excess of the time for which she was compensated.

25.

MBM was aware that Sjoberg performed work on its behalf "off the clock" and for which she was not compensated at any rate.

26.

From April 13, 2015 until June 22, 2015, Sjoberg was an "employee" of MBM as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

27.

The work done by Sjoberg as a Customer Service Representative was an integral and essential part of Defendant MGM's business of operating a food distribution service.

28.

From April 13, 2015 until June 22, 2015, MBM was an "employer" of Sjoberg as defined in FLSA § 3(d), 29 U.S.C. §203(d).

29.

From April 13, 2015 until June 22, 2015, Defendant Ambassador employed Plaintiff as a Customer Service Representative in Macon, Georgia.

30.

From April 13, 2015 until June 22, 2015, Sjoberg was an "employee" of Ambassador as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

31.

The work done by Sjoberg as a Customer Service Representative was an integral and essential part of Defendant Ambassador's business of operating a staffing company.

32.

From April 13, 2015 until June 22, 2015, Ambassador was an "employer" of Sjoberg as defined in FLSA § 3(d), 29 U.S.C. §203(d).

33.

From April 13, 2015 until June 22, 2015, Sjoberg was "engaged in commerce" as an employee of MBM as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

34.

From April 13, 2015 until June 22, 2015, Sjoberg was "engaged in commerce" as an employee of Ambassador as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

35.

From April 13, 2015 until June 22, 2015, MBM was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

36.

During 2015, MBM had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

37.

During 2015, MBM had two or more "employees" engaged in the "production of goods for commerce" as defined in 29 U.S.C. § 203(s)(1)(A).

38.

During 2015, MBM had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

39.

During 2015, MBM had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

40.

At all times material hereto, MBM was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

41.

Throughout Sjoberg's employment, MBM exercised supervisory authority over Sjoberg.

42.

Throughout Sjoberg's employment, MBM scheduled Sjoberg's working hours or supervised the scheduling of Plaintiff's working hours.

43.

Throughout Sjoberg's employment, MBM exercised authority and supervision over Sjoberg's compensation.

44.

Throughout Sjoberg's employment, Sjoberg was not exempt from the maximum hour requirements of the FLSA by reason of any exemption.

45.

Throughout Sjoberg's employment, MBM did not employ Sjoberg in a bona fide professional capacity within the meaning of 29 USC § 213(a).

46.

Throughout Sjoberg's employment, MBM did not employ Sjoberg in a bona fide administrative capacity within the meaning of 29 USC § 213(a).

47.

Throughout Sjoberg's employment, MBM did not employ Sjoberg in a bona fide executive capacity within the meaning of 29 USC § 213(a).

48.

Throughout Sjoberg's employment, MBM did not employ Sjoberg in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213(a).

49.

Throughout Sjoberg's employment, MBM knowingly and willingly truncated the number of hours that Sjoberg actually worked during each work week.

50.

Throughout Sjoberg's employment, MDM was aware that Sjoberg performed work on its behalf "off the clock" and for which she was not being compensated at any pay rate.

51.

From April 13, 2015 until June 22, 2015, Ambassador was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

52.

During 2015, Ambassador had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

53.

During 2015, Ambassador had two or more "employees" engaged in the "production of goods for commerce" as defined in 29 U.S.C. § 203(s)(1)(A).

54.

During 2015, Ambassador had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

55.

During 2015, Ambassador had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

56.

Throughout Sjoberg's employment, Ambassador was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

57.

Throughout Sjoberg's employment, Ambassador exercised supervisory authority over Sjoberg.

58.

Throughout Sjoberg's employment, Ambassador scheduled Sjoberg's working hours or supervised the scheduling of Plaintiff's working hours.

59.

Throughout Sjoberg's employment, Ambassador exercised authority and supervision over Sjoberg's compensation.

60.

Throughout Sjoberg's employment, Sjoberg was not exempt from the maximum hour requirements of the FLSA by reason of any exemption.

61.

Throughout Sjoberg's employment, Ambassador did not employ Sjoberg in a bona fide professional capacity within the meaning of 29 USC § 213(a).

62.

Throughout Sjoberg's employment, Ambassador did not employ Sjoberg in a bona fide administrative capacity within the meaning of 29 USC § 213(a).

63.

Throughout Sjoberg's employment, Ambassador did not employ Sjoberg in a bona fide executive capacity within the meaning of 29 USC § 213(a).

64.

Throughout Sjoberg's employment, Ambassador did not employ Sjoberg in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213(a).

65.

Throughout Sjoberg's employment, Ambassador knowingly and willingly truncated the number of hours that Sjoberg actually worked during each work week.

66.

Throughout Sjoberg's employment, Ambassador was aware that Sjoberg performed work on its behalf "off the clock" and for which she was not being compensated at any pay rate.

67.

Throughout Sjoberg's employment, Ambassador failed to compensate Sjoberg for all hours she performed off the clock.

68.

Throughout Sjoberg's employment, MBM and Ambassador shared the services of Sjoberg.

69.

Throughout Sjoberg's employment, MBM and Ambassador have acted directly or indirectly in the interest of each other with respect to Sjoberg.

70.

Throughout Sjoberg's employment, Sjoberg has been under the direct control of both MBM and Ambassador.

71.

Throughout Sjoberg's employment, MBM and Ambassador have exercised joint control over the Sjoberg in her capacity as an employee.

72.

Throughout Sjoberg's employment, MBM and Ambassador have been a joint employer of Sjoberg within the meaning of the FLSA.

73.

Upon information and belief, by truncating Sjoberg's hours worked, including overtime hours worked, and thereby failing to pay her for all overtime hours actually worked, Defendants have not relied on any letter ruling from the Department of Labor indicating that such practice was permitted under the FLSA.

74.

Upon information and belief, by truncating Sjoberg's hours worked, including overtime hours worked, and thereby failing to pay her for all overtime hours actually worked, Defendants have not relied on any legal advice indicating that such practice was permitted under the FLSA.

75.

Defendants have failed and refused to adequately compensate Plaintiff at the legally required overtime premium rate for all work hours over forty (40) in any and every given workweek, and have willfully refused to rectify the situation.

76.

Defendants are liable to Plaintiff for compensation at the legally required overtime premium rate of $17.25 per hour for all hours worked over forty (40) hours per week.

77.

Defendants' conduct constitute willful violations of 29 U.S.C. §§ 207 and 215 of the FLSA, entitling Plaintiff Sjoberg to all relief afforded under the FLSA, including the award of liquidated damages, and attorneys' fees and costs of litigation pursuant to 29 U.S.C. § 216.

78.

Defendants knew, or showed reckless disregard for the fact that they failed to pay Sjoberg for all overtime hours worked at the required rate under the FLSA.

## CLAIMS FOR RELIEF

### COUNT ONE

### VIOLATION OF 29 U.S.C. §§ 207 AND 215
### AGAINST BOTH DEFENDANTS
**(Overtime Wage Violations)**

79.

Paragraphs 1 through 78 are incorporated herein by this reference.

80.

Throughout Sjoberg's employment, she has been an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

81.

Throughout Sjoberg's employment with Defendants, Sjoberg regularly and routinely worked in excess of forty (40) hours each week.

82.

Throughout Sjoberg's employment with Defendants, Sjoberg regularly worked approximately 12 hours during each work day, except for Sunday when she worked approximately 10 hours.

83.

Throughout Sjoberg's employment with Defendants, Sjoberg regularly worked more than 70 hours during each work week during "back up" periods.

84.

Defendants failed to pay Sjoberg at one and one half times her regular rate for all hours worked in excess of forty (40) hours during each work week from April 13, 2015 through June 22, 2015.

85.

Defendants willfully failed to pay Sjoberg at one and one half times her regular rate for all hours worked in excess of forty (40) hours during each work week from April 13, 2015 through June 22, 2015.

86.

Defendants' violation of §§ 207 and 215 of the Fair Labor Standards Act is intentional and willful. Said violation gives rise to a claim for relief under the FLSA for unpaid overtime wages compensation during the entire period of her employment, liquidated damages in an amount equal to the unpaid compensation, declaratory relief, and reasonable attorneys' fees and expenses of litigation, pursuant to 29 U.S.C. § 216.

## COUNT TWO

## VIOLATION OF 29 U.S.C. § 215(a)(3) AGAINST DEFENDANT MBM
### (Retaliation For Asserting FLSA Rights)

87.

Paragraphs 1 through 78 are incorporated herein by this reference.

88.

In or about mid-May 2015, Sjoberg had a series of conversations with her Supervisor "Leanne" at MBM in which she complained that she had not been paid overtime properly and was entitled to backpay.

18

89.

Sjoberg's complaints about the failure of MBM to pay her the overtime wages for which she was legally entitled constitute protected activity within the meaning of the FLSA § 15(a)(3), 29 U.S.C. § 215(a)(3).

90.

On June 22, 2015, MBM terminated Sjoberg's employment.

91.

MBM's termination of Sjoberg was in retaliation for her protected activities, in violation of FLSA§ 15(a)(3), 29 U.S.C. § 215(a)(3).

92.

As a direct and foreseeable result of MBM's unlawful retaliation, Sjoberg has suffered loss of employment and benefits, loss of income and emotional distress in an amount to be proven at trial.

93.

Sjoberg is entitled to liquidated damages in an equal amount to the financial damages she has suffered as a result of MBM's retaliatory termination of her employment, as well as the award of her costs of litigation, including her reasonable attorneys' fees, in accordance with FLSA § 16 (b), 29 U.S.C. § 216(b).

## COUNT THREE

## VIOLATION OF 29 U.S.C. § 215(a)(3) AGAINST DEFENDANT AMBASSADOR
### (Retaliation For Asserting FLSA Rights)

94.

Paragraphs 1 through 93 are incorporated herein by this reference.

95.

Beginning in or about mid-May through June 22, 2015, Sjoberg had a series of conversations with employees and/or agents of Ambassador in which she complained that she had not been paid overtime properly and was entitled to backpay.

96.

Sjoberg's complaints about the failure of Ambassador pay her the overtime wages for which she was legally entitled constitute protected activity within the meaning of the FLSA § 15(a)(3), 29 U.S.C. § 215(a)(3).

97.

On June 22, 2015, in retaliation for Sjoberg's protected activities, Ambassador failed to give Sjoberg any further work assignments effectively terminating her employment, in violation of FLSA§ 15(a)(3), 29 U.S.C. § 215(a)(3).

98.

As a direct and foreseeable result of Ambassador's unlawful retaliation, Sjoberg has suffered loss of employment and benefits, loss of income and emotional distress in an amount to be proven at trial.

99.

Sjoberg is entitled to liquidated damages in an equal amount to the financial damages she has suffered as a result of MBM's retaliatory termination of her employment, as well as the award of her costs of litigation, including her reasonable attorneys' fees, in accordance with FLSA § 16 (b), 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiff Sjoberg requests that this Court:

(a)     Take jurisdiction of this matter;

(b)     Issue an Order holding each of the Defendants to be an "employer" as that term is defined under the FLSA;

(c)     Grant a trial by jury as to all matters properly triable to a jury;

(d)     Issue a judgment declaring that Plaintiff was an employee of Defendants and was covered by the provisions of the FLSA and that Defendants have failed to comply with the requirements of the FLSA;

(e)     Award Plaintiff proper payment from each Defendant, jointly and severally, for each overtime hour worked from April 13, 2015 until June 22, 2015 calculated at the rate of $17.25 and liquidated damages equaling 100% of the overtime wages due to Plaintiff, as required by the FLSA;

(f)     Award Plaintiff her lost wages and value of lost benefits incurred due to each Defendant's retaliatory termination of her employment, jointly and severally, and liquidated damages equaling 100% of this amount, as required by the FLSA;

(g)     Award Plaintiff damages for the emotional distress she has suffered as a result of each Defendant's retaliatory termination of her employment, jointly and severally in an amount to be determined in the enlightened conscience of the jury;

(h)     Award Plaintiff reinstatement to the position from which she was terminated or to an equivalent position in pay, benefits and stature or, in the alternative, front pay;

(i)     Award Plaintiff prejudgment interest on all amounts owed, jointly and severally;

(j)     Award Plaintiff nominal damages, jointly and severally;

(k)     Award Plaintiff her reasonable attorneys' fees and costs of litigation

pursuant to 29 U.S.C. § 216(b) jointly and severally; and

(l)     Award any and such other further relief this Court deems just, equitable

and proper.

Respectfully submitted this 20th day of November 2015.

/s/ Mitchell D. Benjamin
Mitchell D. Benjamin
Georgia Bar No. 049888
Matthew W. Herrington
Georgia Bar No. 275411

**DELONG, CALDWELL, BRIDGERS,
FITZPATRICK & BENJAMIN, LLC**
3100 Centennial Tower
101 Marietta Street, NW
Atlanta, Georgia 30303
(404) 979-3150 Telephone
(404) 979-3170 Facsimile
benjamin@dcbflegal.com
matthew.herrington@dcbflegal.com   ATTORNEYS FOR PLAINTIFF